Jared Allebest, #13485 (UT) #034640 (AZ) #325086 (CA)
Allebest Law Group PLLC
Attorney for Plaintiffs
212 East Crossroads Blvd #207
Saratoga Springs, UT 84045
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FAITH EDWARDS, and ROES I-X | COMPLAINT |
| Plaintiffs, | Civil No. |
| vs. | Judge |
| TEC MANAGEMENT, LLC, a corporation, PATRIOT POINTE, LLC a corporation and ROES I-X. | Jury Trial Requested |
| Defendants. | |

FAITH EDWARDS, (hereinafter "Ms. Edwards"), by and through her attorney JARED M. ALLEBEST of Allebest Law Group PLLC, hereby submit the following:

**PRELIMINARY STATEMENT**

1. Ms. Edwards, the Plaintiff, is Deaf. She is bilingual in both English and American Sign Language (ASL). She does not use hearing aids, cochlear implants, or other similar personal amplification devices. On one or more occasions, the Defendant discriminated against the Plaintiff by sending her a bill in the amount of $302.50 to pay half of the cost of Patriot Pointe, LLC providing an American Sign Language (ASL) interpreter for her.

1

2. Under the Fair Housing Act, the Defendants own and/or lease dwellings within the meaning of U.S.C. § 3602(b), which includes "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."

3. The FHA provides that it is illegal "to discriminate against any person in the terms, conditions, privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling," because of disability. 42 U.S.C. § 3604(f)(2).

4. Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

5. Under the FHA, it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

6. Under the Americans with Disability Act, the Defendants, jointly and severally (including various agencies and divisions), lease and operate places of "Public accommodation" for purposes of 42 U.S.C. § 12132 and the implementing regulations, 28 C.F.R. § 36.104.

7. The Defendants (including their various agencies and divisions) are obligated by Title III of the ADA to ensure that "no individual shall be discriminated

against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." §28 CFR 36.201

8.    The Defendants failed to establish within their agencies and divisions, policies, practices, and procedures required under the ADA to ensure that persons who are Deaf are not subjected to discrimination. If such policies do exist, the Defendants (including all various agencies and divisions) failed to assure that agents, and/or its other agents, are aware of the policies and/or are properly trained to follow and practice the procedures such policies would mandate. Furthermore, the Defendants' illegal methods of administration over their respective programs and/or personnel tend to exclude and segregate people with disabilities from the benefits of public programs or services.

9.    The ADA is a legislative response to the fact that "historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

10. American Sign Language ("ASL") is a visual, three-dimensional, and non-linear language, and its grammar and syntax differ from those of English and other spoken languages. With its own grammar and syntax, ASL is best thought of as a foreign language used by American deaf people. Deaf individuals are often educated in Deaf schools and grow up in culturally deaf environments. Because of both physical and environmental factors, deaf individuals usually have great difficulty achieving a working

command of spoken or written English, while they can communicate complex thoughts and opinions with great ease in ASL. Therefore, most deaf individuals when interacting with their landlords or apartment staff require ASL interpreters when that care involves complicated information and lengthy communications.

11. The ADA recognizes that ASL interpreters are auxiliary aids and services that a covered entity must provide to their employees when requested or offered to the employee. The term "auxiliary aids and services" means "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments; qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments; acquisition or modification of equipment or devices; and other similar services and actions." 42 U.S.C. § 12103(1)(A-D).

12. Although ASL interpreters are not defined under Title I of the ADA, they are defined under Title II and III. A qualified interpreter means an "interpreter who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. Qualified interpreters include, for example, sign language interpreters, oral transliterators, and cued-language transliterators."[1]

13. Although there is no prohibition on requiring an individual with a disability to bring another individual or minor child to interpret for that person under Title I of the ADA, it is forbidden under Title II and III.[2]

---

[1] 28 C.F.R. § 35.104 (Title II), 28 C.F.R. § 36.104 (Title III).

[2] 28 C.F.R. § 35.160(c)(1-3) (Title II), 28 C.F.R. § 36.303(2-4) (Title III).

14. It is important to point out that the ADA does not require the ASL interpreter to be licensed and certified. It just requires them to be "qualified." Utah has recently passed a law requiring that qualified ASL interpreters must also be licensed and certified. Utah recently passed HB371 which amended Title 53A, Chapter 26a to now require interpreters to obtain state certification as American Sign Language-trained interpreters and that anyone who interprets in the state of Utah without being certified is charged with a Class B Misdemeanor.

15. As a result of the passage of HB371, Utah Administrative Code Rule R746-510-2, defines a "Certified Interpreter" to mean a "person who is certified as meeting the certification requirements" of the "Interpreter Services for the Hearing Impaired Act."

16. Title III of the ADA states that "a public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301(c).

17. The U.S. Department of Justice and the U.S. Department Of Housing And Urban Development have issued a "Joint Statement Of The Department Of Housing And Urban Development And The Department Of Justice Reasonable Accommodations Under The Fair Housing Act" in which it specifically states that "housing providers may not require persons with disabilities to pay extra fees or deposits as a condition of

receiving a reasonable accommodation."[3]

18. One of the underlying principles in the ADA is that public and private providers of goods and services shall not establish surcharges on individuals with disabilities for the use of the accessible features or programs intended to assure equal access. The simple reason is that special surcharges and fees that apply to persons with disabilities effectively treat persons with disabilities differently from similarly situated non-disabled persons. If non-disabled persons are not charged a fee to enter a facility or otherwise enjoy access, then charging a person with disability a fee amounts to discrimination. Also, charging fees and surcharges undermine the ADA's goals of barrier removal and integration because surcharges substitute economic barriers for physical barriers and perpetuate practices and attitudes that segregate individuals with disabilities from the larger society.

19. The Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its regulations when their agents, or employees, at various times and places by placing a surcharge on a Deaf tenant after the landlord has provided effective communication to a tenant with a hearing loss.

The Defendants violated the Utah Fair Housing Act §57-21-101 et seq. when it refused to "to make reasonable accommodations in rules, policies, practices, or services when the accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling." Utah Code 57-21-5(4)(b)

20. An apartment such as Patriot Pointe, LLC deprives deaf individuals' right to

---

[3]U.S. Department of Justice. "Joint Statement Of The Department Of Housing And Urban Development And The Department Of Justice Reasonable Accommodations Under The Fair Housing Act".  May 14, 2004. https://www.justice.gov/crt/us-department-housing-and-urban-development. Accessed on January 14, 2024.

effective communication and equal housing opportunity when it refused to provide an ASL interpreter as requested by a Deaf tenant and/or provided an ASL interpreter but subsequently places a place a surcharge on an individual or group of individuals with a disability to cover the cost of providing auxiliary aids, alternative formats or reasonable modifications. Thus, the Defendant discriminated against deaf residents by submitting a surcharge to the Plaintiff to cover the cost of providing an ASL interpreter to the Plaintiff.

21. Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices. Defendants must implement policies and procedures that will ensure renters are not given a bill to cover the cost of providing effective communication to a Deaf tenant. Defendants must also implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' residential services. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful disability discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602 et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and/or Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.; and any regulations implementing the foregoing statutes as well as in violation of the Utah Fair Housing Act §57-21-101 et seq.

**JURISDICTION AND VENUE**

22.    This action arises under the law of the United States, including Fair Housing Act ("FHA"), 42 U.S.C. § 3602 et seq, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973,

29 U.S.C. § 794 et seq. The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. 1343(a)(3), as well as 42 U.S.C. § 12188(a) and 29 U.S.C. § 794a and 42 U.S.C. § 1983 for claims arising under color of law.

23. This action also arises under the law of the State of Utah, including the Utah Fair Housing Act ("UTFHA"), §57-21-101 et seq.

23.    Venue of this action is appropriate in the United States District Court for the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b) and (c) as the claim arose in such district and, further, as the Defendant(s) conduct business in such district.

24. This Court also has jurisdiction over the Plaintiff's state law claims set forth in this complaint pursuant to its supplemental jurisdiction to hear state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose under a common nucleus of operative facts, the state action is so related to the federal claim that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

## THE PARTIES

25.    FAITH EDWARDS, the Plaintiff, is an individual who is bilingual in English and American Sign Language. Ms. Edwards leased a certain apartment located at 2239 North 100 East, Unit 54, North Ogden, Utah 84414 which is owned, operated, or leased by the Defendants.

26.    TEC MANAGEMENT, LLC manages several residential properties in northern Utah such as Elk Ridge Apartments, Hilltop Towers, Oakwood Apartments, University Ridge, Calla Homes, BlueKoi Apartments, and Patriot Pointe. Their business

address is PO Box 1430, Layton, Utah 84041. Defendant is subject to the requirements of the Fair Housing Act, the Americans With Disabilities Act, and/or Section 504 of the Rehabilitation Act.

27. PATRIOT POINTE, LLC is one of the residential properties that is managed by TEC MANAGEMENT LLC. It provides apartments and townhomes for tenants to live in in North Ogden, Utah. It is located at 111 East 2250 North, North Ogden Utah 84414. Defendant is subject to the requirements of the Fair Housing Act. Defendant is subject to the requirements of the Fair Housing Act, the Americans With Disabilities Act, and/or Section 504 of the Rehabilitation Act.

## STATEMENT OF FACTS

28. Some background on Deaf[4] culture is necessary to understand the balance of this case. American Sign Language, "the sixth most commonly used language in this country," is not a gestured form of English. "ASL is a mix of native signs and French sign language. Some words are finger-spelled, borrowed from English the same way that the words gourmet, roulette, and taco are borrowed from French and Spanish." And the native signs derive from "hand shape, palm direction, placement of the hand on the body or within the signing space, movement, and non-manuals (facial expressions)." D. Scheier, *Barriers to Health Care for People with Hearing Loss: A Review of Literature*, Journal of the New York State Nurses Association at 6, https://bit.ly/2QYg8T6 (internal

---

[4] "[T]he word deaf is written with either an uppercase or lower-case 'D.' When referring to the audiological condition of deafened people, deaf is written with a lower-case 'd.' An uppercase 'D' is used when writing about the Deaf culture, a group with which many prelingually deaf people affiliate themselves." D. Scheier, Barriers to Health Care for People with Hearing Loss: A Review of Literature, Journal of the New York State Nurses Association at 4, https://bit.ly/2QYg8T6.

9

citations omitted). In other words, "ASL is a visual, three-dimensional, non-linear language, and its grammar and syntax differ from the grammar and syntax of English and other spoken languages." *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1105 (9th Cir. 2010). "In many cases, there is no one-to-one correspondence between signs in ASL and words in the English language." *Id.*

29. Due to physical, environmental, and pedagogical factors, many deaf individuals have difficulty acquiring English. Indeed, the majority of prelingually deaf individuals are not fluent in English, and the median reading level of deaf high school graduates is fourth grade. *See* Jamie McAlister, *Deaf and Hard-of-Hearing Criminal Defendants: How You Gonna Get Justice If You Can't Talk to the Judge?,* 26 Ariz. St. L.J. 163, 180 n. 113 (1994). This is because many deaf people acquire English as their second language later in life—after ASL or another form of sign language—and well past the critical developmental period of language acquisition. *See People v. Ripic*, 587 N.Y.S.2d 776, 783 (N.Y. App. Div. 1992) ("Written English is often incomprehensible to deaf individuals whose primary language is American Sign Language.").

Nor can deaf individuals communicate effectively by reading a person's lips. Lip-reading or speech-reading—the ability to understand the speech of another by watching the speaker's lips—does not provide effective communication for deaf and hard of hearing individuals. *See* Michele LaVigne & McCay Vernon, *An Interpreter Isn't Enough: Deafness, Language, and Due Process*, 2003 WISC. L.REV. 843, 855 (2003) In fact, the upper limits of estimates for lip-reading accuracy have been as low as 10% to 30% of words correct. *See* Lynne E. Bernstein & Edward T. Auer, *Speech Perception and Spoken Word Recognition*, *in* Oxford Handbook Of Deaf Studies, Language, And

Education 399, 402 (Mark Marschark & Patricia E. Spencer eds., 2d ed. 2011) (citation omitted). This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary, for the reasons set forth above. *See* LaVigne & Vernon, *supra*, at 857 ("Simply put, many deaf people do not understand the words we are using, even if the words are put into a visible form by writing or finger-spelling.").

30. Thus, "[t]o deny a deaf person an ASL interpreter, when ASL is their primary language, is akin to denying a Spanish interpreter to a person who speaks Spanish as their primary language. *Updike v. Multnomah Cty.*, 870 F.3d 939, 958 (9th Cir. 2017).

## FACTS

29. Ms. Edwards and another Deaf tenant named Troy G. Harrop entered into a Lease with Patriot Pointe. The lease commenced on April 11, 2023. The rent for the Premises is $1,910.00 plus other fees.

30. Ms. Edwards and Mr. Harrop resided at 2239 North 100 East Unit 54, North Ogden Utah 84414.

31. The Plaintiff would frequently ask for an ASL interpreter to communicate with the staff members at Patriot Point. Most of the time, her request for reasonable accommodation in the form of an in person ASL interpreter was denied and the parties would be reduced to communication by pen and paper. The Plaintiff never agreed to this arrangement because this communication method was not effective for her in communicating with individuals who worked for Patriot Point. For many individuals who

11

are deaf, written communication is not an effective form of communication. Given that Ms. Edwards is Deaf and that her primary method of communication is ASL, written communication was not effective. However, she unwillingly went along with it because Patriot Point wasn't willing to provide her with an ASL interpreter.

32. Sometime around May 2nd, 2023, an unknown tenant complained about the Plaintiff having dog in her residence that would bark very loudly.

33. On May 3, 2023, Patriot Pointe sent Ms. Edwards and Mr. Harrop a written notice informing her that they believed she was in violation of the "no pets" policy and fined her $1,000.00. This fine was billed to the Plaintiff's account.

34. On May 11th, 2023, the manager of Patriot Point and Ms. Edwards engaged in a written correspondence with one another in which the manager informed Ms. Edwards that "the $500 pet deposit has been added to your portal to pay. The prorated pet rent and pet DNA test charge have also been added to your tenant portal" and that "the $1000.00 unauthorized animal fee is still on your account, this needs to be paid as soon as possible." The Plaintiff's written response was "l000?? And 500?? You need to get provide ASL interpreter about this we need to ask some questions."

34. An interpreter was provided for Ms. Edwards at the meeting held between Ms. Edwards and Mr. Harrop on June 20, 2023, to resolve the alleged violation of the "No Pets" policy. Patriot Pointe did agree that they would pay the full cost of the interpreter, which was $605.00.

35. Ms. Edwards received a bill from the Defendants in August of 2023 in which it stated that she needed to pay $302.50 which is half of the cost of the Defendants providing her with an ASL interpreter. (See Exhibit #1). This is clearly a violation of the

12

ADA's strict liability prohibition on charging for the cost of providing a reasonable accommodation to a disabled tenant. See 28 C.F.R. § 36.301(c). That bill was subsequently rescinded.

36. Within a week after the first conversation, Ms. Edwards brought the translator back to Patriot Pointe's office and demanded to speak again. The translator asked who would be paying for the interpretation services and Ms. Edwards indicated that Patriot Pointe would be paying for the services. Patriot Pointe, obviously balked at the prospect of paying and bill similar to the one they had just paid the interpreter of $605.00.

37. Sometime around November 25th, 2023, the Plaintiff moved away from Patriot Point because she was tired of being discriminated by the Defendants. Patriot Point routinely refused to provide her with an ASL interpreter, sent her a bill for half of the cost of providing her with an ASL interpreter, and then subsequently insisted on going with the cheaper accommodation of engaging in written communication with her.

38. Defendant TEC MANAGEMENT, LLC acknowledges that on their website[5] that "We know and adhere to the latest local, state, and federal legislation that applies to renting and managing rental properties. We are Fair Housing compliant." (See Exhibit #2).

39. Defendant PATRIOT POINTE, LLC does not appear to have any policy, practice, or procedure in following federal or state antidiscrimination law other than it has a "General Use Statement" that "Patriot Pointe is committed to providing a website that is accessible to a wide audience. We are actively working to increase the accessibility and usability of our website and, in doing so, adhere to many of the

---

[5] TEC MANAGEMENT, LLC. "Our Services." 2024. https://www.tecmgmt.net/services. Accessed on January 14, 2024

available standards and guidelines."[6] (See Exhibit #3.)

## FIRST CAUSE OF ACTION

## Fair Housing Act ("FHA"), 42 U.S.C. § 3602 et seq. (Against Defendant(s))

## Discrimination Based on Disability

40. Plaintiff incorporates by reference the allegations of paragraphs 1 through 37 above.

41. This action is brought to enforce of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, et seq.

42. Defendants own and/or lease dwellings within the meaning of U.S.C. § 3602(b), which includes "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."

43. The FHA provides that it is illegal "to discriminate against any person in the terms, conditions, privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling," because of disability. 42 U.S.C. § 3604(f)(2).

44. Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

45. Under the FHA, it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or

---

[6] PATRIOT POINTE, LLC. "Terms of Service" 204. https://www.liveatpatriotpointe.com/accessibility-statement. Accessed on January 14, 2024.

rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

46. Defendants discriminated on the basis of disability, in violation of the above-cited provisions of the FHA.

47. The Plaintiff requested and were denied the reasonable accommodation of having a qualified ASL interpreter, and thus, were denied access and an opportunity to participate, use and enjoy services provided by Defendants' facilities that are connected to their dwellings, and which equally situated hearing residents are able to enjoy.

48. Upon information and belief, Defendants' refusal to offer ASL interpreter services is the result of a policy or practice of Defendants, and Defendants are deliberately indifferent to the rights of a deaf individual to have an equal opportunity to benefit from Defendants' services.

49. The Defendants violated the FHA by submitting a bill to the Plaintiff in August of 2023 in which it stated that she needed to pay $302.50 which is half of the cost of the Defendants providing her with an ASL interpreter.

50. Regardless of whether the statements made by the Defendants or documents provided by the Defendants were intended to indicate any preference, limitation, or discrimination based on disability, an ordinary listener would understand their statements to indicate a limitation, preference, or discrimination because of the disability of the proposed occupants. The Defendants had the effect of infringing on the rights of people with disabilities.

51. Plaintiff is an aggrieved person within the meaning of 42 U.S.C. § 3602(i),

has been injured as a result of Defendants' discriminatory conduct, and has suffered damages, including severe emotional distress, spending extra time and money to find housing elsewhere, hiring an attorney to seek a resolution in this matter, as well as and other damages.

52. Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs pursuant to the FHA, 42 U.S.C. § 3613(c).

## SECOND CAUSE OF ACTION

### AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12111 et seq.
### (Against Defendant(s))

### Discrimination Based on Disability

53. Plaintiff incorporates by reference the allegations of paragraphs 1 through 52 above.

54. Plaintiffs are individuals with a disability because they are substantially limited in the major life activities of, hearing, speaking, and communicating. See 42 U.S.C. § 12102 (2)(A).

55. Under the Title III of the Americans with Disabilities Act, ADA, apartments are deemed to be places of public accommodations. 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

56. Places of Public accommodations, such as apartments and townhomes that are available to rent, are required to extend to people with disabilities the "goods, services, facilities, privileges, advantages, or accommodations" that are given to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § §36.202(b).

57. Title III requires a "public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 28 C.F.R. § §§ 35.150(a) However, it does not "necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities" or "require a public entity to take any action that would threaten or destroy the historic significance of an historic property" or "require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § §§ 35.150(a)(1-3).

58. Proving qualified interpreters is part of the Title III's mandate that "public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities" and that the "type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

59. In order for effective communication to occur, the "auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

60. Discrimination occurs when there is "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or

accommodations to individuals with disabilities" unless the place of public accommodation "can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

61. The Plaintiffs were discriminated against by reason of their disability of being Deaf and suffered when the Defendants disregarded the Plaintiff's reasonable accommodation requests for an ASL interpreter in order to communicate with staff members at Patriot Point.

62. The Defendant(s) subjected the Plaintiff to disparate treatment and failed to provide reasonable accommodation for their disability by not providing effective communication to the Plaintiffs after they have made one or more reasonable accommodation request for an ASL interpreter. The Deaf tenants were not treated in an equitable manner as their hearing tenants.

63. The Defendants discriminated against the Plaintiff by attempting to get the Plaintiff to pay a surcharge in the amount of $302.50 which is half of the cost of the Defendants providing her with an ASL interpreter. (See Exhibit #1). This is clearly a violation of the ADA's strict liability prohibition on charging for the cost of providing a reasonable accommodation to a disabled tenant. See 28 C.F.R. § 36.301(c).

64. The Defendants engaged in intentional discrimination, with malice, reckless indifference, and deliberate indifference.

65. The Plaintiff was injured as the result of Defendant(s)'s conduct. She experienced severe emotional distress, had to spend extra time and money to find housing elsewhere, has been forced to hire an attorney to seek a resolution in this

matter, as well as and other damages.

66. The Plaintiff has been forced to engage the services of an attorney. Therefore, she is entitled to an award of the attorney's fees and costs.

## THIRD CAUSE OF ACTION

### AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12111 et seq.
### (Against Defendant(s))

### Surcharges

67. Plaintiff incorporates by reference the allegations of paragraphs 1 through 66 above.

68. Plaintiffs are individuals with a disability because they are substantially limited in the major life activities of, hearing, speaking, and communicating. See 42 U.S.C. § 12102 (2)(A).

69. Under the Title III of the Americans with Disabilities Act, ADA, apartments are deemed to be places of public accommodations. 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

70. Places of Public accommodations, such as apartments and townhomes that are available to rent, are required to extend to people with disabilities the "goods, services, facilities, privileges, advantages, or accommodations" that are given to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § §36.202(b).

71. Title III requires a "public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 28 C.F.R. § §§ 35.150(a) However, it does not "necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities" or "require a public

entity to take any action that would threaten or destroy the historic significance of an historic property" or "require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § §§ 35.150(a)(1-3).

72. Title III of the ADA states that "a public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301(c).

73. The Defendants discriminated against the Plaintiff by attempting to get the Plaintiff to pay a surcharge in the amount of $302.50 which is half of the cost of the Defendants providing her with an ASL interpreter. (See Exhibit #1). This is clearly a violation of the ADA's strict liability prohibition on charging for the cost of providing a reasonable accommodation to a disabled tenant.

74. The Plaintiff was injured as the result of Defendant(s)'s conduct. She experienced severe emotional distress, had to spend extra time and money to find housing elsewhere, was forced to hire an attorney to seek a resolution in this matter, as well as and other damages.

75. The Plaintiff has been forced to engage the services of an attorney. Therefore, she is entitled to an award of the attorney's fees and costs.

**<u>FOURTH CAUSE OF CAUSE OF ACTION</u>**

**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq
(Against Defendant(s))**

**Disability Discrimination**

76. Plaintiff incorporates by reference the allegations of paragraphs 1 through 75 above.

77. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to Defendants' conduct. been in full force and effect and have applied to Defendants' conduct.

78. At all times relevant to this action, Defendants received federal financial assistance, including housing grants, state, and federal program grants, Therefore, Defendants' services are "a program or activity" receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

79. Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

80. Defendants' actions constitute discrimination, solely on the basis of disability, by denying meaningful access to the services, programs, and benefits that Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

81. Defendants' actions constitute discrimination, solely on the basis of disability, by denying meaningful access to the services, programs, and benefits that Defendants offer to other individuals, and by imposing a surcharge on the Plaintiff after providing

auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

82. Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance "must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

83. Upon information and belief, Defendants' refusal to offer ASL interpreter services and/or imposing a surcharge after providing an ASL interpreter is the result of a policy or practice of Defendants, and Defendants are deliberately indifferent to the rights of a deaf individual to have an equal opportunity to benefit from Defendants' services.

84. The Rehabilitation Act extends standing and relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2). Plaintiff is an aggrieved person as defined by Section 794a(a)(2) of the Rehabilitation Act. As a result of Defendants' actions alleged above, Plaintiff has been injured as a result of Defendants' discriminatory conduct, and has suffered damages, including severe emotional distress, spending extra time and money to find housing elsewhere, hiring an attorney to seek a resolution in this matter, as well as and other damages.

85. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct and deliberate indifference, including severe emotional distress, spending extra time and money to find housing elsewhere, hiring an attorney to seek a resolution in this matter, as well as and other damages as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

22

86. As set out above, absent injunctive relief there is a clear risk that Defendants' discriminatory actions will continue to occur to current and future tenants who are deaf or hard of hearing. Therefore, Plaintiff is entitled to injunctive relief.

87. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## FIFTH CAUSE OF CAUSE OF ACTION

### Utah Fair Housing Act ("UTFHA"), §57-21-101 et seq.
### (Against Defendant(s))

### Disability Discrimination

88. Plaintiff incorporates by reference the allegations of paragraphs 1 through 87 above.

89. It is a discriminatory housing practice to do any of the following because of a person's race, color, religion, sex, national origin, familial status, source of income, disability, sexual orientation, or gender identity to discriminate against a person in the terms, conditions, or privileges of the sale or rental of a dwelling; or in providing facilities or services in connection with the dwelling; or represent to a person that a dwelling is not available for inspection, sale, or rental when the dwelling is available.
Utah Code 57-21-5(1)(a)(i-iii).

90. It is a discriminatory housing practice to make a representation orally or in writing or make, print, circulate, publish, post, or cause to be made, printed, circulated, published, or posted any notice, statement, or advertisement, or to use any application form for the sale or rental of a dwelling, that directly or indirectly expresses any preference, limitation, or discrimination based on race, color, religion, sex, national

origin, familial status, source of income, disability, sexual orientation, or gender identity, or expresses any intent to make any such preference, limitation, or discrimination. Utah Code 57-21-5(2).

91. Discriminatory housing practices under the Utah Fair Housing Act "is a refusal to make reasonable accommodations in rules, policies, practices, or services when the accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling." Utah Code 57-21-5(4)(b).

92. Upon information and belief, Defendants' refusal to offer ASL interpreter services and/or imposing a surcharge after providing an ASL interpreter is the result of a policy or practice of Defendants, and Defendants are deliberately indifferent to the rights of a deaf individual to have an equal opportunity to benefit from Defendants' services.

93. As set out above, absent injunctive relief there is a clear risk that Defendants' discriminatory actions will continue to occur to current and future tenants who are deaf or hard of hearing. Therefore, Plaintiff is entitled to injunctive relief.

94. Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs pursuant to the UTFHA. Utah Code 57-21-5(11)(1)(a-c).

95. Additionally, the Court may assess civil penalties against the Defendant in an amount not exceeding $10,000 if the respondent has not been adjudged to have committed any prior discriminatory housing practice; $25,000 if the respondent has been adjudged to have committed one other discriminatory housing practice during the five-year period ending on the date of the filing of the complaint; or $50,000 if the respondent has been adjudged to have committed two or more discriminatory housing

practices during the seven-year period ending on the date of the filing of this complaint. Utah Code 57-21-5(11)(2)(a-c).

**RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

1. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have discriminated against the Plaintiff in violation of the  Fair Housing Act ("FHA"), 42 U.S.C. § 3602 et seq, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. and the Utah Fair Housing Act ("UTFHA"), §57-21-101 et seq.

2. Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals' meaningful access to and full and equal enjoyment of Defendants' facilities, services, or programs;

3. Order Defendants:

   a. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination of failing to provide effective communication against deaf or hard of hearing individuals;

   b. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

   c. to develop, implement, promulgate, and comply with a policy to ensure

that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

d.  to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances;

e.  to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are not required to pay an additional fee ("surcharge") to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures.

f.  to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

g.  to train all their employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the FHA, ADA, Section 504 of the Rehabilitation Act, and the Utah Fair Housing Act.

h.  to train all their employees, staff, and other agents on a regular basis about Defendants' policy regarding how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals; and

i.  to implement a program of testing Defendants' employees, staff, and other

26

agents to determine whether they are complying with the requirements of the FHA, RA, and ACA.

4. Award to Plaintiff:

   a. Compensatory damages pursuant to the Fair Housing Act, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and/or the Utah Fair Housing Act.

   b. Punitive damages pursuant to the Fair Housing Act and the Utah Fair Housing Act,

   c. Reasonable costs and attorneys' fees pursuant to the Fair Housing Act, Americans With Disabilities Act, Section 504 of the Rehabilitation Act, and/or the Utah Fair Housing Act.

   d. Assess civil penalties against the Defendant in an amount not exceeding $10,000 if the respondent has not been adjudged to have committed any prior discriminatory housing practice; $25,000 if the respondent has been adjudged to have committed one other discriminatory housing practice during the five-year period ending on the date of the filing of the complaint; or $50,000 if the respondent has been adjudged to have committed two or more discriminatory housing practices pursuant to Utah Code 57-21-5(11)(2)(a-c).

   e. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

   f. All other necessary and appropriate relief at law and equity deemed appropriate by the Court.

## JURY DEMAND

Plaintiff through his undersigned attorneys, hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

DATED this this 23rd day of January  2024.

/s/: Jared Allebest

Jared Allebest,
#13485 (UT), #034640 (AZ), #325086 (CA)
Allebest Law Group
Attorney for Plaintiffs

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2024, I have made service of the foregoing on the party/ies listed below via [X] personal service, [  ] electronic communication and/or [  ] via USDC CM/ECF system.

Tec Management, LLC
PO Box 1430
Layton, Utah 84041

Patriot Pointe, LLC
111 East 2250 North,
North Ogden Utah 84414

Tyler Jensen
Counsel for the Defendants
LeBaron & Jensen P.C.
1241 North Main Street, Suite 200,
Layton, Utah 84041
Telephone: (801) 773-9488,
Fax: (801) 773-9489
Email: tylerjensen@lebaronjensen.com


DATED this 25th day of January 2024.
*/s:/ Jared Allebest*
Allebest Law Group PLLC
Attorney for Plaintiff

# Exhibit #1



Property Addr

**August (Next Month)**

| Description | Amount |
| --- | --- |
| Deaf Services: Half of the bill for Interpreters<br>Due on 08/01/2023 | $302.50 |
| Common Utilities - 6/1/23 - 6/30/23<br>Due on 08/01/2023 | $76.95 |
| Garbage Removal - 6/1/23 - 6/30/23<br>Due on 08/01/2023 | $13.57 |
| Liability to Landlord Insurance<br>Due on 08/01/2023 | $9.50 |
| Rent (12 Month)<br>Due on 08/01/2023 | $1,850.00 |
| Comfort Package<br>Due on 08/01/2023 | $150.50 |
| Property Tax<br>Due on 08/01/2023 | $25.00 |
| **Total Balance** | $2,428.02 |

Mainten

You curr

# Exhibit #2



## OUR SERVICES

Home  Availability  Portfolio ⌄  Services  Residents  Owners  About Us  Contact

*We provide a wide range of professional services to meet your needs.*

## SERVICES INCLUDE

| MARKETING | + |
| SCREENING & SELECTION | + |
| MAINTENANCE & INSPECTIONS | + |
| FINANCIAL | + |
| LEGAL | − |

We know and adhere to the latest local, state, and federal legislation that applies to renting and managing rental properties. We are Fair Housing compliant.

| TENANT MOVE-OUT | + |
| LEASE SIGNING | + |
| ASSET MANAGEMENT | + |
| INSPECTIONS | + |




## Interested in our services? We're here to help!

We want to know your needs exactly so that we can provide the perfect solution.
Let us know what you want and we'll do our best to help.

NAME

EMAIL

PHONE

MESSAGE

☐ I'm not a robot    reCAPTCHA
Privacy - Terms

Get Started

## Testimonials

" *"TEC Management is the best in the business. They make the leasing process, turnover and maintenance easy, and their staff is top notch."*

**John Hansen**

" *"I own several properties and managed them on my own for years. It got to be a lot and I was undervalued on my properties. I hired TEC and they took all the working with tenants and collecting off my shoulders and gave it the professionalism I needed. It helped bring the valuation of my properties up as well by getting my rents to market rate."*

**Mike Bastian**

" *"TEC Management is great to work with! I know that they will take care of my investments like they would their own. Their personable service makes them easy to work with and an effective team."*

**5D Development**



TEC|MANAGEMENT LLC

📞 385-220-0545

✉ leasing@tecmgmt.net

📍 PO Box 1430, Layton, UT 84041, United States

Online Portal
**Log In** | Sign Up

Owner Portal
**Log In** | Sign Up

**Sitemap** | **Accessibility**
© 2024 All Rights Reserved.
TEC Management LLC

appfolio

# Exhibit #3





# Terms of Service

### GENERAL USE STATEMENT

Patriot Pointe is committed to providing a website that is accessible to a wide audience. We are actively working to increase the accessibility and usability of our website and, in doing so, adhere to many of the available standards and guidelines.

This website strives to conform to Level A of the World Wide Web Consortium (W3C) Web Content Accessibility Guidelines 2.0). These guidelines explain how to make web content more accessible for people with disabilities. Conformance to these guidelines will help make the web more user-friendly. This website has been built using code compliant with W3C standards for HTML and CSS.

Although Patriot Pointe strives to adhere to the WCAG 2.0 Level A standards for accessibility and usability, it may not always be possible to do so in all areas of the website. We are continually evaluating solutions that will bring all areas of the site up to the same level of overall web accessibility. In the meantime, should you experience any difficulty in accessing the Patriot Pointe website, please don't hesitate to contact us.



RESERVE YOUR NEW HOME NOW - ASK US A QUESTION

- All fields are required -

| HOME | NEIGHBORHOOD | RESIDENT PORTAL |
| GALLERY | SCHEDULE A TOUR | CONTACT US |
| AMENITIES | VIEW AVAILABLE UNITS | PRIVACY POLICY |
| FLOOR PLANS | APPLY ONLINE | TERMS OF SERVICE |
| | PET FRIENDLY | ACCESSIBILITY-STATEMENT |
| | GET DIRECTIONS | ACCESSIBLE ONE PAGE |



Copyright © 2024 Patriot Pointe Apartments. All rights reserved.

Apartment Digital Marketing by MarketApts.com®

Patriot Pointe
111 E 2250 N
North Ogden, UT, 84414
(385) 220-0545
Contact Us!
https://www.liveatpatriotpointe.com/